USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: SEP 3 0 201

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ERIC A SMITH,

                Plaintiff,

v.

LAUREN GREY OUTLAW, CORIZON HEALTH SERVICES, INC., NEW YORK CITY, and P.A. RENEN BEAUCHARD,

                Defendants.[1]

No. 15-CV-9961 (RA)

OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

Plaintiff Eric A. Smith, proceeding *pro se*, brings this 42 U.S.C. § 1983 action alleging that he was deprived medical care while a pretrial detainee at the Robert N. Davoren Center at the Rikers Island Correctional Facility. Defendants Lauren Grey Outlaw, a licensed social worker, Renen Beauchard, a physician assistant, the City of New York, and Corizon Health Services, Inc. move to dismiss the Amended Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted. For the reasons that follow, Defendants' motion is granted in part and denied in part.

## FACTUAL BACKGROUND

For purposes of deciding this motion, the Court accepts as true all facts alleged by Plaintiff. *See, e.g., LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009).

The events giving rise to Plaintiff's allegations occurred on November 24, 2015, Am. Compl. § 5, while he was a pretrial detainee at Rikers, in the custody of the City, *id.* § 3. That day,

---

[1] The Clerk of Court is respectfully directed to make two amendments to the caption: (1) remove Defendant John Doe Psychiatrist and (2) replace the name of Defendant Corizon with the corporation's full name, Corizon Health Services, Inc.

Plaintiff returned to Rikers from Bellevue Psychiatric Hospital and informed Outlaw that he was feeling suicidal and "wanted to drown [himself]." *Id.* § 5. Plaintiff asked to return to Bellevue. *Id.* He also reported that he had not received his prescribed doses of heart or psychiatric medication and that that he was experiencing chest pains, as well as stiffness and numbness in his left arm. *Id.* Outlaw allegedly asked Plaintiff about his medications and attempted to "convince [him] that [he] didn't want to go to Bellevue." *Id.* Plaintiff "took exception" to Outlaw "questioning [him] as if she was a psychiatrist or a psychologist" and became frustrated by her "lack of action." *Id.*

At this point, Outlaw escorted Plaintiff to meet "the psych," later identified by the City as Physician Assistant Renen Beauchard.[3] Plaintiff alleged that Outlaw told Beauchard that he should be sent to his cell because he would not answer her questions. Plaintiff refused, claiming that he had not yet received treatment for either his chest pains or his suicidal ideations. *Id.* After Beauchard informed Plaintiff that he would not be sent to Bellevue, Plaintiff again refused to go to his cell. *Id.* Outlaw and Beauchard then called the "probe" team and Plaintiff was strip searched and forced to return to his cell. *Id.* Plaintiff was not provided any medical treatment. *Id.* Plaintiff claims to have suffered the following injuries: a heart attack, "heart pains," emotional distress, PTSD, mental anguish, major depressive disorder, and "coerced anxiety disorder." *Id.*

## PROCEDURAL HISTORY

On December 18, 2015, Plaintiff commenced this action, alleging a violation of 42 U.S.C. § 1983. Dkt. 2. By order dated January 4, 2016, the Court dismissed Plaintiff's claim against the Department of Corrections, requested that the City waive service of summons, and directed, pursuant to *Valentin v. Dinkins*, 121 F.3d 72, 75 (2d Cir. 1997) (per curiam), that the New York City Law Department provide Plaintiff with the identity of the John Doe defendant. Dkt. 6.

---

[3] Although Plaintiff refers to Beauchard as "the psych," it is unclear whether he was a physician's assistant who specialized in issues relating to psychiatry.

Plaintiff was given thirty days after receiving said information from the City to file an Amended Complaint. *Id.* On June 3, 2016, having obtained the identities of the individual Defendants, Plaintiff filed the Amended Complaint, Dkt. 28, which Defendants now move to dismiss, Dkt. 50. By letter dated June 1, 2017, Plaintiff notified the Court that, although he will not file a response, he does oppose the Motion to Dismiss. Dkt. 65.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In considering a motion to dismiss, however, "the court is to accept as true all facts alleged in the complaint . . . [and] draw all reasonable inferences in favor of the plaintiff." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). "This rule applies with particular force where plaintiff alleges civil rights violations or where the complaint is submitted *pro se*." *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998). Indeed, "[w]here, as here, the complaint was filed *pro se*, it must be construed liberally to raise the strongest arguments it suggests. Nonetheless, a *pro se* complaint must state a plausible claim for relief." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (alterations, citations, and internal quotation marks omitted).

## DISCUSSION

The Court construes the Amended Complaint as alleging that the individual Defendants—Outlaw and Beauchard—deprived Plaintiff of necessary medical care, constituting deliberate indifference to his serious medical needs in violation of the Fourteenth Amendment. With respect

to the City and Corizon, the company responsible for providing medical care at Rikers, the Court construes the Complaint as seeking recovery under a theory of municipal liability pursuant to *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). *See Bess v. City of New York*, No. 11-CV-7604 (TPG), 2013 WL 1164919, at *2 (S.D.N.Y. Mar. 19, 2013) ("In providing medical care in prisons, Corizon performs a role traditionally within the exclusive prerogative of the state and therefore, in this context, is the functional equivalent of the municipality."); *see also Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (per curiam). Because the Court finds that Plaintiff has failed to adequately plead that Outlaw was deliberately indifferent to his medical needs or that a municipal policy or custom caused the alleged denial of medical treatment, Defendants' Motion to Dismiss is granted as to Outlaw, the City, and Corizon. Plaintiff's claim against Beauchard, however, survives.

I. **Denial of Medical Care**

Plaintiff was a pretrial detainee of the City during the events giving rise to his claims and his allegations are thus assessed under the Due Process Clause of the Fourteenth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 21 n.3, 29 (2d Cir. 2017). Deliberate indifference claims of pretrial detainees are not assessed under the Eighth Amendment because such detainees "have not been convicted of a crime and thus may not be punished in any manner—neither cruelly nor otherwise." *Id.* at 29 (citation and internal quotation marks omitted). To make out a valid deliberate indifference claim under the Due Process Clause, a plaintiff must satisfy a two-prong test. *See id.* First, the deprivation of medical care must have been "sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (citation and internal quotation marks omitted). Second, the defendant must have acted or failed to act with "a sufficiently culpable state of mind," which, "in prison conditions cases" is "deliberate indifference to inmate health or

4

safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Under the Fourteenth Amendment, deliberate indifference is measured from an objective perspective. *Darnell*, 849 F.3d at 35.

To determine whether an alleged deprivation of medical care is "sufficiently serious," a court is required to first determine whether the medical care was inadequate and, if so, "to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Salahuddin*, 467 F.3d at 279-80 (citing *Helling v. McKinney*, 509 U.S. 25, 32–33 (1993)). "There is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003). A court's inquiry, therefore, "must be tailored to the specific circumstances of each case." *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003). Ultimately, "the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker*, 717 F.3d at 125. Indeed, the deliberate indifference standard "contemplates a condition of urgency that may result in degeneration or extreme pain." *Chance*, 143 F.3d at 702 (citation and internal quotation marks omitted).

The objective inquiry differs depending on whether the plaintiff alleges a complete denial of medical care or a mere delay in or disruption of treatment. *See Smith*, 316 F.3d at 185-86. "[I]f the unreasonable medical care is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious." *Salahuddin*, 467 F.3d at 280. Indeed, "[t]here is no need to distinguish between a prisoner's underlying 'serious medical condition' and the circumstances of his 'serious medical need' when the prisoner alleges that prison officials have failed to provide general treatment for his medical condition." *Smith*, 316 F.3d at 185-86. If, however, the inmate alleges "a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on

5

the challenged *delay or interruption* in treatment rather than the prisoner's *underlying medical condition* alone in analyzing whether the alleged deprivation" is sufficiently serious. *Id.* (emphasis in original).

Although the deprivation of care inquiry is context-specific, the Second Circuit has set forth a non-exhaustive list of relevant considerations. *See Brock*, 315 F.3d at 162. Beginning with the question of whether a plaintiff suffers from a "serious medical condition," the following factors are also germane to the analysis: "(1) whether a reasonable doctor or patient would perceive the medical need in question as important and worthy of comment or treatment, (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." *Id.* (citation and internal quotation marks omitted).

For a plaintiff to satisfy the second prong—concerning *mens rea*—the defendant must have behaved in an objectively reckless manner, or "knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35. Although *mens rea* is assessed from an objective perspective, as opposed to the more demanding subjective recklessness standard employed in the Eighth Amendment context, *see id.*, negligence is still insufficient to give rise to a valid claim under the Fourteenth Amendment, *see id.* at 36. Indeed, "any § 1983 claim for a violation of due process requires proof of a *mens rea* greater than mere negligence." *Id.*; *see also Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472 (2015) ("[L]iability for *negligently* inflicted harm is categorically beneath the threshold of constitutional due process." (citation and internal quotation marks omitted)). Because such allegations are sufficient to satisfy the more onerous subjective recklessness standard, it follows that objective recklessness is similarly "properly pleaded by allegations of 'intentional efforts on the part of prison officials to delay plaintiff's access to medical care at a time when he was in extreme pain' and has made his medical problems

6

known 'to the attendant prison personnel,' or 'complete denial' of medical treatment, or of a 'reckless or callous indifference to the safety of prisoners.'" *See Veloz v. New York*, 35 F. Supp. 2d 305, 311 (S.D.N.Y. 1999) (citation and internal quotation marks omitted).

### A. Serious Deprivation of Medical Care

Plaintiff claims that he suffered the following injuries: a heart attack, "heart pains," emotional distress, PTSD, mental anguish, major depressive disorder, and "coerced anxiety disorder." Am. Compl. § 5. Accepting his Complaint as true, Plaintiff appears to assert two distinct, cognizable injuries for which he was allegedly deprived adequate medical care: (1) a heart attack and associated chest pains and (2) a psychiatric injury comprised of a host of related disorders. Plaintiff has alleged facts demonstrating the seriousness of the deprivation of medical care relating to the heart attack, but he has failed to do so with respect to his psychiatric condition.

#### 1. Heart Attack and Chest Pains

Having asserted a complete failure to provide any treatment for his heart condition, Plaintiff has plausibly alleged deliberate indifference to serious medical needs. Plaintiff claims that he was forced to retreat to his cell without treatment of any kind. This is not an instance in which a prisoner merely disagrees with the form of reasonable treatment that was provided by jail personnel. *See Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001) ("[D]isagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim. These issues implicate medical judgments and, at worst, negligence amounting to medical malpractice, but not the Eighth Amendment."). The Court finds, therefore, that Plaintiff has alleged facts constituting inadequate medical care.

Because Plaintiff has alleged that he was denied any and all treatment for symptoms relating to the onset of a heart attack—rather than a mere delay in treatment or disruption in an ongoing treatment regimen—the Court conducts the second part of the objective inquiry by considering the severity of the underlying medical condition. Although Plaintiff has not specified the precise timing or severity of the symptoms he experienced on the day in question, he does allege to have suffered a heart attack. When he presented to Rikers personnel, he informed them that he had not received his prescribed dose of medication for a pre-existing heart condition and complained of chest pains, as well as numbness and stiffness in his left arm. Am. Compl. § 5. The Court draws the reasonable inference that Plaintiff was either suffering a heart attack at the time he presented to Rikers personnel or that his symptoms were at least suggestive of a heart attack or other serious cardiac condition. Particularly in light of the obligation to construe Plaintiff's pleadings liberally, *see Chance*, 143 F.3d at 701, the Court finds that a prisoner who presents with such symptoms, suffers a heart attack, and is completely denied treatment has satisfied the second aspect of the objective inquiry by demonstrating circumstances that "pose[d] an unreasonable risk of serious damage to his health," *Walker*, 717 F.3d at 125; *see also Melvin v. Cty. of Westchester*, No. 14-CV-2995 (KMK), 2016 WL 1254394, at *5 (S.D.N.Y. Mar. 29, 2016) (plaintiff alleged a sufficiently serious injury due to his factual allegations that he had elevated blood pressure and a low pulse rate and complained of chest pains); *Mandala v. Coughlin*, 920 F. Supp. 342, 353 (E.D.N.Y. 1996) (noting that "ignoring a prisoner's complaints of chest pains where the prisoner later died of a heart attack" has been found to constitute a sufficiently serious injury); *cf. Hutchinson v. N.Y. State Corr. Officers*, No. 02-CV-2407, 2003 WL 22056997, at *5 (S.D.N.Y. Sept. 4, 2003) (complaints of chest pains, alone, do not constitute a sufficiently serious condition); *Flemming v. Velardi*, No. 02 Civ. 4113(AKH), 2003 WL 21756108, at *2 (S.D.N.Y. July 30, 2003)

(acknowledging that heart conditions can be sufficiently serious to constitute a deliberate indifference claim but that plaintiff's complaints merely of "chest pains" and "discomfort" did not satisfy the objective injury inquiry and plaintiff did not allege "that his heart problems rose to the level of severity that triggers an Eighth Amendment claim").[5] This conclusion is buttressed by the relevant factors set forth by the Second Circuit: Plaintiff's symptoms and alleged heart attack constitute a condition that a reasonable patient or physician would consider "important and worthy of comment or treatment," impacts the daily activities of the patient, and entails substantial pain. *See Brock*, 315 F.3d at 162.

## 2. Psychiatric Injury

Plaintiff, however, has not alleged that the deprivation of care related to his psychiatric injury was sufficiently serious. It is well-established that psychiatric injuries may present serious medical needs. *See Cuoco v. Moritsugu*, 222 F.3d 99, 106-07 (2d Cir. 2000). With respect to this injury, the focus is not on the "underlying medical condition" but the degree to which the delay or interruption in treatment worsened his condition, *see Smith*, 316 F.3d at 185-86, because at the time of the events in question Plaintiff was already undergoing psychiatric treatment. Although Plaintiff complained of suicidal ideations to the individual Defendants, he has not alleged how, if at all, the purported one-day disruption of treatment posed an unreasonable danger to his health. *See id.* at 187 ("Indeed, in most cases, the actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm."); *Bellotto v. Cty. of Orange*, 248 F. App'x 232,

---

[5] There is an arguable basis for interpreting Plaintiff's claim as alleging a disruption in treatment in light of the fact that he had a pre-existing heart condition for which he had been prescribed medication. Given the nature of a heart attack, however, and bearing in mind the duty to interpret a *pro se* plaintiff's pleadings liberally, *see Chance*, 143 F.3d at 701, Plaintiff's assertion that he was experiencing chest pains and stiffness and numbness in his arm constitutes an allegation of complete denial of medical care.

9

237-38 (2d Cir. 2007) (summary judgment in favor of defendants affirmed because, despite missing doses of psychiatric medication and being inadequately monitored for worsening mental health problems, plaintiff "[did] not allege that he suffered any pain or physical harm during his incarceration"). Accordingly, he has failed to adequately plead a serious deprivation of medical care with respect to his psychiatric condition. *See Hamm v. Hatcher*, No. 05 Civ. 503(ER), 2013 WL 71770, at *9 (S.D.N.Y. Jan. 7, 2013) (district court granted defendants summary judgment where plaintiff's access to psychiatric medication was interrupted for ten days and he complained of "exacerbated depression, nightmares, hopelessness, and suicidal thoughts" because, "[e]ven assuming that Plaintiff's averments were substantiated by admissible evidence," his allegations were "insufficient to show that he was subjected to a significant risk of serious harm").

## B. Objective Recklessness

Having adequately alleged a serious deprivation of medical care with respect to a purported heart attack, Plaintiff must also assert facts demonstrating that Beauchard and Outlaw were deliberately indifferent to his needs in denying him treatment. Plaintiff has adequately pled the elements of objective recklessness with respect to Beauchard but not Outlaw.

### 1. Defendant Beauchard

Plaintiff has sufficiently pled objective recklessness as to Physician Assistant Beauchard. According to Plaintiff, Beauchard took no steps to diagnose or treat him or to arrange for treatment by another medical professional even though Plaintiff had a pre-existing heart condition and complained of chest pain, as well as stiffness and numbness in his left arm. These circumstances, taken together, did not necessarily require Beauchard to provide any specific form of treatment. *See Sonds*, 151 F. Supp. 2d at 312. At a minimum, however, Beauchard should have taken *some* action instead of merely returning Plaintiff to his cell. *See Veloz*, 35 F. Supp. 2d at 311 (the more

10

demanding subjective recklessness standard is "properly pleaded by allegations of . . . 'complete denial' of medical treatment." (citation and internal quotation marks omitted)). There is thus a sufficient basis for the Court to conclude that, at the very least, Beauchard should have known of the obvious risk to Plaintiff's health, even if he was not subjectively aware of it. *See Darnell*, 849 U.S. at 35. With respect to Beauchard, therefore, Plaintiff has properly alleged objective recklessness.

### 2. Defendant Outlaw

Plaintiff, however, has not adequately pled objective recklessness with respect to Lauren Outlaw. The primary thrust of Plaintiff's argument is that she was dismissive of his complaints. What is missing from Plaintiff's allegations, however, is some basis to suggest that Outlaw knew, or should have known of, an excessive risk to his safety. Unlike Beauchard, Outlaw is not alleged to have been a medical professional but rather a licensed social worker. Indeed, there is no dispute that, upon hearing Plaintiff's complaints and questioning him, Outlaw escorted Plaintiff to a medical professional—Beauchard. Plaintiff has thus failed to plead facts indicating that Outlaw's behavior amounted to anything more than negligence. *See Feliciano v. Anderson*, 15-CV-4106 (LTS) (JLC), 2017 WL 1189747, at *14 (S.D.N.Y. Mar. 30, 2017) (plaintiff failed to state a claim with respect to correctional officer because "[c]orrections officers who defer to the judgment of medical professionals are only liable if the plaintiff pleads facts demonstrating that the 'nonmedical defendants should have challenged the medical professionals' decisions'"); *Smith v. Woods*, No. 05-CV-01439 (LEK/DEP), 2008 WL 788573, at *9 (N.D.N.Y. Mar. 20, 2008) (granting defendant summary judgment because she was a licensed social worker and there was no indication that she had the authority to override the treatment decision made by the treating psychiatrist); *Inesti v. Hogan*, No. 11 Civ. 2596(PAC)(AJP), 2013 WL 791540, at *26 (S.D.N.Y.

Mar. 5, 2013) (granting defendants, captains at the jail, summary judgment because "it would be entirely appropriate [for them] to defer to medical staff"); *Brock*, 315 F.3d at 164 (upholding grant of summary judgment to prison superintendent on the basis that he had "no medical training" and deferred to decision of trained medical personnel because such an allegation amounted, at most, to one of negligence rather than recklessness); *Kemp v. Wright*, No. 01 CV 563(JG), 2005 WL 893571, at *9 (E.D.N.Y. Apr. 19, 2005) (granting director of inmate grievance program summary judgment because a person "with no medical training [who] gives automatic and complete deference to a decision by a physician" amounts only to negligence (citation and internal quotation marks omitted)). Accordingly, Plaintiff has failed to adequately state a claim with respect to Outlaw.

## II. Municipal Liability

Although municipalities and other local government bodies are "persons" within the meaning of 42 U.S.C. § 1983, it is well-established that they cannot be liable merely because they employ a tortfeasor. *See Board of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997). Instead, a government body may be liable for a violation of § 1983 only "if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011); *see also Cash v. Cty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011). A claim for municipal liability under § 1983 thus requires a plaintiff to "plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (citation and internal quotation marks omitted); *see also Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012). With respect to the existence of a policy or custom, at the very least "a plaintiff must allege facts tending to support, at least circumstantially, an inference

that such a municipal policy or custom exists." *Santos v. New York City*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012).

Here, accepting Plaintiff's factual allegations as true and liberally construing his pleadings, his claims against the City and Corizon nonetheless fail because he has not identified the existence of an official policy or custom that led to any constitutional injury. The Complaint contains neither factual allegations that a municipal employee was acting pursuant to any sort of official policy, custom concerning the denial of medical treatment, nor allegations of widespread conduct or any other fact that could give rise to an inference of the existence of such a custom or policy, *see Guzman v. United States*, No. 11 Civ. 5834(JPO), 2013 WL 5018553, at *3 (S.D.N.Y. Sept. 13, 2013). "Although there is no heightened pleading requirement for complaints alleging municipal liability under § 1983," *Kucharczyk v. Westchester County*, No. 14-CV-601 (KMK), 2015 WL 1379893, at *6 (S.D.N.Y. Mar. 26, 2015), Plaintiff must nonetheless provide some facts capable of supporting the existence of such a policy or custom. Because his pleadings fail to do so, they are inadequate to support a § 1983 action against either the City or Corizon.

## CONCLUSION

Although the Court has been mindful to afford Plaintiff's Complaint the liberal interpretation that it is due, Plaintiff has nevertheless failed to state a plausible Fourteenth Amendment claim against Outlaw, the City, and Corizon. Accordingly, the claims against the defendants other than Beauchard are dismissed.

13

The Clerk of Court is respectfully directed to terminate item number 50 on the docket. A conference is hereby scheduled for November 9, 2017 at 2:00 p.m. to discuss the scope and timing of discovery.

SO ORDERED.

Dated: September 30, 2017
New York, New York

Ronnie Abrams
United States District Judge